IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| HARTZELL WD GRAY, III, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 4:25-cv-00369-DGK |
| CITY OF KANSAS CITY, MISSOURI, and MORGAN SAID, | ) ) ) | |
| Defendants. | ) ) | |

## ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT MORGAN SAID'S PARTIAL MOTION TO DISMISS

This case arises from Plaintiff Hartzell Gray's participation in a protest at City Hall, Kansas City, Missouri, and the subsequent circumstances of his employment at KCUR, a local radio station.

Now before the Court is Defendant Morgan Said's Motion to Dismiss Counts II, III, and IV of Plaintiff's First Amended Complaint, EFC No. 1-1,[1] pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 2. For the reasons discussed below, the motion is DENIED IN PART and GRANTED IN PART. Count IV as to Mo. Rev. Stat. § 565.090.1 (harassment) is dismissed. All other claims remain.

### Standard of Review

Federal Rule of Civil Procedure 8 requires a complaint to contain "a short and plain statement of the claim showing the pleader is entitled to relief." A claim may be dismissed if it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss, a court "must accept as true all of the complaint's factual allegations and view

---

[1] Both the original "Petition" and the "First Amended Petition" are included in ECF No. 1-1. Paragraph citations in this Order are to the "First Amended Petition," ECF No. 1-1 at 12–24. The Court refers to the First Amended Petition as the "First Amended Complaint" or the "Complaint" throughout.

them in the light most favorable to" the plaintiff. *Stodghill v. Wellston School Dist.*, 512 F.3d 472, 476 (8th Cir. 2008).

To avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff need not demonstrate the claim is probable, only that it is more than just possible. *Id.* Rule 8 "does not require detailed factual allegations" to show facial plausibility, "but it demands more than an unadorned, the-defendant-harmed-me accusation." *Id.* "Asking for plausible grounds to infer [a defendant's liable conduct] . . . simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" thereof. *Twombly*, 550 U.S. at 556.

In reviewing the complaint, a court construes it liberally and draws all reasonable inferences from the facts in the plaintiff's favor. *Monson v. Drug Enforcement Admin.*, 589 F.3d 952, 961 (8th Cir. 2009). A court generally ignores materials outside the pleadings but may consider materials that are part of the public record or materials that are necessarily embraced by the pleadings. *Miller v. Toxicology Lab. Inc.*, 688 F.3d 928, 931 (8th Cir. 2012).

## Background

As alleged in Plaintiff's First Amended Complaint, ECF No. 1-1, on August 18, 2022, Plaintiff attended a protest with KC Tenants, an affordable-housing advocacy group, during a City Council meeting at City Hall in Kansas City, Missouri. The meeting became tense, and one protestor (not Plaintiff) was arrested. Plaintiff was protesting peacefully and lawfully.

After the Council meeting and protest, Kansas City Mayor Quinton Lucas's Chief of Staff, Defendant Morgan Said, called Lisa Rodriguez, the news director for KCUR at the time, about Plaintiff's involvement in the protest. Defendant told Rodriguez the Mayor's Office believed that KCUR "is very fair in its reporting, but that Plaintiff's personal and political activities could reflect poorly on the station and damage how people see KCUR." Defendant mentioned Plaintiff by name and also claimed that Plaintiff was the leader of the protest and was leading chants. This was not true. During the conversation, Defendant "issued a veiled/vague threat to KCUR if it did not terminate Plaintiff or in some way discipline" him.

The next day, August 19, 2022, Plaintiff's supervisor called him to inform him about the call from the Mayor's Office and to pull him off his weekend shift. Plaintiff is an hourly employee of KCUR, so he lost pay from not working over the weekend.

About a week later, Defendant called Rodriguez to ask what steps had been taken regarding Plaintiff's involvement with the protest.

On August 25, 2025, Rodriguez sent Plaintiff a text message asking to have a conversation about how he can remain involved in his "causes" without impeding the reporting work at KCUR. Rodriguez expressed concern that the Mayor's Office might limit KCUR's access to City Hall. She texted, "I hope the mayor still takes our calls . . . ." Plaintiff then stopped attending protests and demonstrations and began attending KC Tenants meetings virtually.

On March 18, 2023, Defendant and Plaintiff met to discuss the situation. During the meeting, Defendant asked Plaintiff "what do you want?" and offered Plaintiff seats on the City Commission on Reparations and the Economic Development Corporation of Kansas City. Plaintiff did not accept these positions.

Following Defendant's actions, Plaintiff experienced medically diagnosable emotional distress, for which he received treatment.

This action was removed from the Circuit Court of Jackson County, Missouri, to this Court on May 15, 2025. Plaintiff alleges First Amendment retaliation under 42 U.S.C. § 1983 against Defendant City of Kansas City (Count I), tortious interference with business relations against Defendant Said (Count II), negligent infliction of emotional distress against Defendant Said (Count III), and negligence per se for violations of Rev. Mo. Stat. § 565.090 (harassment) and KCMO Ord. Sec. 50-159 (harassment) against Defendant Said (Count IV).

## **Discussion**

Defendant argues Count II (tortious interference with a business relationship) fails to plead absence of justification. She argues official immunity shields her from suit on Counts III (negligent infliction of emotional distress) and IV (negligence per se). Alternatively, she argues Count IV's negligence per se claim for violation of Mo. Rev. Stat. § 565.090.1 (harassment) must be dismissed because the statute provides no private cause of action. The Court addresses each argument in turn.

### I. **Plaintiff states a plausible tortious interference claim.**

Defendant argues Count II should be dismissed because Plaintiff has failed to allege the absence-of-justification element of tortious interference with business relations. ECF No. 3 at 4–6. *See Nazeri v. Missouri Valley College*, 860 S.W.2d 303, 316 (Mo. 1993) (listing elements of tortious interference). Plaintiff's claim, in essence, is that Defendant threatened to cut off KCUR's access to the Mayor if KCUR did not fire or discipline Plaintiff for participating in the protest at City Hall. This threat then caused KCUR to pull Plaintiff off his scheduled weekend shift, leading to a loss of wages.

"To establish a tortious interference claim, the plaintiff must prove the defendant's interference with the plaintiff's expectancy was not justified." *Reyna Hotel Corp. v. Lotus Hosp. Mgmt., LLC*, 714 S.W.3d 423, 435 (Mo. Ct. App. 2025). Under Missouri law, "justification" to interfere in a business interest generally means a defendant has "a legitimate interest, economic or otherwise, in the [business] expectancy the plaintiff seeks to protect," *Nazeri*, 860 S.W.2d at 317, "such as a prior contract of [one's] own or a financial interest in the affairs of the person persuaded not to enter into a contract," *Cmty Title Co. v. Roosevelt Fed. Sav. & Loan Ass'n*, 796 S.W.2d 369, 372 (Mo. 1990). When a

> defendant has a legitimate interest, economic or otherwise, in the expectancy the plaintiff seeks to protect, then the plaintiff must show that the defendant employed improper means in seeking to further only his own interests. In the context of [tortious interference], improper means are those that are independently wrongful, such as threats, violence, trespass, defamation, misrepresentation of fact, restraint of trade, or any other wrongful act recognized by statute or the common law.

*Nazeri*, 860 S.W.2d at 317.

Defendant claims she had "a legitimate interest in making sure that news coverage was fair and unbiased," ECF No. 3 at 4, but the question on this motion to dismiss is whether Plaintiff alleged sufficient facts to show Defendant lacked justification, not whether Defendant can assert a legitimate interest. Plaintiff alleges Defendant "had no justification . . . as she issued a veiled threat to KCUR which interfered with Plaintiff's relationship." ECF No. 1-1 at ¶ 19; *see also id.* at ¶¶ 17, 18, 22. Plaintiff also alleges Defendant made misrepresentations of fact regarding the extent and position of Plaintiff's participation in the protest. *Id.* at ¶ 16. Even if Defendant's supposed interest in KCUR's reporting and reputation were a sufficiently legitimate interest in Plaintiff's business relationship with KCUR, Plaintiff has alleged Defendant used improper

5

Case 4:25-cv-00369-DGK    Document 28    Filed 12/01/25    Page 5 of 12

means—threat and misrepresentation of fact—when she sought to further that interest.  As such, he has sufficiently pled absence of justification.

The Court notes that Defendant misleadingly quotes *Nazeri* in her Suggestions in Support of the Motion to Dismiss in an apparent attempt to avoid or obscure the fact that threat and misrepresentation of fact are improper means for furthering a legitimate interest.  In her statement of the legitimate-interest law, Defendant refers the Court to *Nazeri*, 860 S.W.2d at 317, quoted above, but in truncated form: "the plaintiff must show that the defendant employed improper means—such as violence, defamation, restraint of trade, or 'any other wrongful act . . .'—in seeking to further only his own interests."  ECF No. 3 at 4.  Defendant omits three examples of improper means from *Nazeri*'s list—threats, trespass, and misrepresentation of fact—two of which (threats, misrepresentation of fact) Plaintiff alleges in his Complaint.  Defendant's selective statement of the law here is troubling and appears to be a lack of candor to the Court.  If Defendant does this in any future briefing, the Court may impose sanctions.

While Defendant does acknowledge the threat allegation, she argues it is only a "'threadbare recital[] of [an] element of [the] cause of action'" and not a "specific pleading of an improper means."  ECF No. 12 at 3 (quoting *Iqbal*, 556 U.S. at 678).  But threat is not an element of tortious interference.  Moreover, Rule 8 does not require detailed factual allegations to show facial plausibility, *Iqbal*, 556 U.S. at 678, only enough fact to raise a reasonable expectation that discovery will reveal evidence of liability, *Twombly*, 550 U.S. at 556.  Plaintiff makes a factual assertion of threat to show Defendant lacked justification for her alleged acts of interference.  True, Plaintiff does not "describe[] the threat with any factual detail," ECF No. 12 at 3, but the Court can reasonably infer the threat's contours from the facts alleged in the Complaint, namely, that Defendant threatened to cut off or limit KCUR's journalistic access to

the Mayor unless KCUR were to fire or at least discipline Plaintiff for his participation in the protest. *See, e.g.*, ECF No. 1-1 at ¶ 18 (threat to the entire radio station because of Plaintiff's participation in the protest), ¶ 22 (KCUR news director's concern about access to information from the Mayor's Office in light of the threat). Defendant appears to assume the Complaint must allege additional facts for the Court to assess "whether [the veiled threat] involved any wrongful . . . conduct." *Id.* But, as noted above, a threat is wrongful conduct as such. *See Nazeri*, 860 S.W.2d at 317.

Defendant also argues the absence-of-justification element requires Plaintiff to show Defendant acted for a "personal" and not a "corporate" reason. *See* ECF No. 3 at 4–5; ECF No. 12 at 4. Because Plaintiff alleges Defendant, as Chief of Staff to the Mayor, threatened KCUR on behalf of the City—*i.e.*, her reasons were "corporate" and not "personal"—Plaintiff has failed to plead the absence-of-justification element. ECF No. 3 at 4–5. This argument fails.

Missouri law distinguishes "corporate" from "personal" interests when a plaintiff attempts to bring a tortious interference claim against a party to his business relation or expectancy in order to clarify that a plaintiff has no such claim against a person or entity who has the right to fire him or is otherwise a party to his contract. *See Farrow v. St. Francis Med. Ctr.*, 407 S.W.3d 579, 602 (Mo. 2013) ("[A]n action for tortious interference with a business expectancy will lie against a third party only."). *See also Reyna Hotel Corp.*, 714 S.W.3d at 434 (collecting cases).

This is the rationale of *Stehno v. Sprint Spectrum, L.P.*, Defendant's primary authority for her argument. As such, *Stehno* is readily distinguishable from this case. The defendant in *Stehno* was not a third party to the plaintiff's business relations, so the plaintiff had no claim for tortious interference. *See Stehno v. Sprint Spectrum, L.P.*, 186 S.W.3d 247, 251–53 (Mo. 2006).

That is not the situation here. Neither Defendant Said nor the Office of the Mayor had any "corporate" interest in Plaintiff's employment at KCUR within the meaning established by Missouri caselaw, i.e., an interest in a business relation or expectancy to which Defendant or the Office of the Mayor is also a party. The corporate/personal distinction has no application here.

All told, Defendant has not shown that Plaintiff's Complaint fails to allege absence of justification.

**II. Defendant has not shown she is entitled to official immunity for Counts III and IV.**

Defendant next argues official immunity entitles her to dismissal of Count III (negligent infliction of emotional distress) and Count IV (negligence per se). ECF No. 3 at 6–8.

Official immunity "protects public employees from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts. . . ." *Southers v. City of Farmington*, 263 S.W.3d 603, 610 (Mo. 2008) (citations omitted). "Generally speaking, discretionary acts are those acts involving the official's exercise of reason in developing a means to an end, and 'the employment of judgment to determine how or whether an act should be performed or a course pursued.'" *Hawkins v. Holloway*, 316 F.3d 777, 789 (8th Cir. 2003) (quoting *Harris v. Munoz*, 43 S.W.3d 384, 387 (Mo. Ct. App. 2001)). The Missouri Supreme Court recently summarized the law as follows:

> The purpose of this doctrine is to allow public officials to make judgments affecting the public safety and welfare without the fear of personal liability. . . . When a public official asserts the affirmative defense of official immunity, she should be afforded such immunity so long as she was acting within the scope of her authority and without malice. . . . Courts applying the doctrine of official immunity must be cautious not to construe it too narrowly lest they frustrate the need for relieving public servants of the threat of burdensome litigation. . . . Official immunity does not apply, and a public official may be held personally liable for the damages the official caused, in two narrow exceptions: (1) when a public official fails to perform a ministerial duty required of the official by law, or (2) when a public official acts in bad faith or with malice.

*State ex rel. Love v. Cunningham ex rel. Ludwick*, 689 S.W.3d 489, 495 (Mo. 2024) (cleaned up).

Bad faith means "'dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive, or ill will partaking of the nature of fraud.'" *Boude v. City of Raymore*, 855 F.3d 930, 935 (8th Cir. 2017) (quoting *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 447 (Mo. 1986)). Legal malice is "the intentional doing of a harmful act without justification or excuse." *Downey v. United Weatherproofing*, 253 S.W.2d 976, 980 (Mo. 1953); *see also Ross v. Holton*, 640 S.W.2d 166, 171 (Mo. Ct. App. 1982) ("'Legal malice' is the intentional doing of a wrongful act without justification."). Such "legal malice," which *Ross v. Holton* applied to an intentional-interference-with-contract claim, "does not necessarily include actual malice, that is, malice in the sense of spite or ill will." *Downey*, 253 S.W.2d at 980.

To invoke "the malice exception" to official immunity, a plaintiff must allege "acts or omissions implicating a malicious motive or purpose, or conscious wrongdoing suggesting an actual intent to cause injury." *Carlton v. Means*, 688 S.W.3d 625, 631 (Mo. Ct. App. 2024). *See also Boude*, 855 F.3d at 935 (showing "bad faith or malice" usually requires showing "actual intent to cause injury" under Missouri law). A showing that an official has acted intentionally to cause harm to someone not engaged in illegal activity can be "specific evidence of conscious wrongdoing." *Green v. City of St. Louis*, 52 F.4th 734, 741 (8th Cir. 2022) (affirming denial of official immunity on motion to dismiss negligent infliction of emotional distress claim (among others) under Missouri law because officers deployed tear gas after a protest near an individual who alleged she was not engaging in illegal activity at the time).

Plaintiff's negligent infliction and negligence per se claims are based on the same conduct as his First Amendment retaliation and his tortious interference claims. Plaintiff has alleged facts showing that Defendant threatened his employer concerning his continued

employment with the intent of having Plaintiff terminated or disciplined in retaliation for his participation in a lawful protest. As shown above, threats are improper and wrongful by definition and help prove absence of justification in the context of tortious interference. And if Defendant issued a threat, she clearly did so intentionally. Moreover, the purpose of the threat was to get Plaintiff fired or at least disciplined at work. As alleged, Defendant acted with an actual intent to cause injury in response to Plaintiff's legal participation in a constitutionally protected activity. Under the Eighth Circuit's application of Missouri law, this is enough to show "sufficient evidence of conscious wrongdoing," i.e., bad faith or malice, at this stage of the litigation. Threatening a news station to burden a citizen's right to protest is not the sort of "exercise of reason in developing a means to [the] end" of furthering "public safety and welfare" to which official immunity may attach. Therefore, Defendant is not entitled to official immunity as to Counts III and IV.

**III. Plaintiff fails to state a negligence per se claim under Mo. Rev. Stat. § 565.090.**

Finally, Defendant argues the Court should dismiss Count IV (negligence per se) because there is no private cause of action for violation of Mo. Rev. Stat. § 565.090.1. Count IV also alleges negligence per se for violation of KCMO Ord. Sec. 50-159 (Harassment), but Defendant does not challenge this allegation of Count IV.

"Negligence per se is a form of ordinary negligence that results from the violation of a statute." *Lowdermilk v. Vescovo Bldg. & Realty Co.*, 91 S.W.3d 617, 628 (Mo. Ct. App. 2002) (citation omitted). "A 'statute which creates a criminal offense and provides a penalty for its violation, will not be construed as creating a new civil cause of action independently of the common law, unless such appears by express terms or by clear implication to have been the legislative intent.'" *Ryno v. Hillman*, 641 S.W.3d 385, 390 (Mo. Ct. App. 2022) (quoting *Christy*

*v. Petrus*, 295 S.W.2d 122, 126 (Mo. 1956)). "In the absence of any indication of such [legislative] intent, we are constrained to assume that had the legislature desired to provide for enforcement . . . by civil action, as well as by criminal prosecution, such a provision would have been incorporated [in the statute]." *Otte v. Edwards*, 370 S.W.3d 898, 903 (Mo. Ct. App. 2012).

Mo. Rev. Stat. § 565.090.1 makes it a crime for a person, "without good cause, [to] engage[] in any act with the purpose to cause emotional distress to another person, and such act does cause such person to suffer emotional distress." Harassment is a class E felony, punishable by a fine of up to $10,000 (§ 558.002.1(1)) and incarceration for up to four years (§ 558.011.1(5)). The statute thus provides a penalty for its violation. For the Court to construe it as creating a civil cause of action, there must be express terms that it does so or a clear implication that the Missouri Legislature intended to provide one in addition to the statutory penalties.

When the Missouri Legislature intends to create a private cause of action for violation of a criminal statute, it knows how to say so in the statute itself. *See, e.g.*, Mo. Rev. Stat. § 573.110.7 ("In addition to the criminal penalties listed in subsection 6 of this section [defining nonconsensual dissemination of private sexual images as a class D felony], the person in violation of the provisions of this section shall also be subject to a private cause of action from the depicted person."). Nothing in the harassment statute explicitly creates a private cause of action, and Plaintiff provides no evidence that the Missouri Legislature intended to create a private cause of action. The Court therefore has no grounds to infer a private cause of action for violation of Missouri's criminal harassment statute. Plaintiff thus fails to state a claim for negligence per se with respect to Mo. Rev. Stat. § 565.090.

## Conclusion

For the reasons discussed above, the motion is DENIED IN PART and GRANTED IN PART. Count IV as to Mo. Rev. Stat. § 565.090.1 (harassment) is dismissed. All other claims remain.

**IT IS SO ORDERED.**

Date: December 1, 2025          /s/ Greg Kays
                                GREG KAYS, JUDGE
                                UNITED STATES DISTRICT COURT